UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **UNITED STATES OF AMERICA** | NOTICE OF MOTION TO SUPPRESS EVIDENCE AND TO COMPEL DISCOVERY |
| v. | |
| **OUSAIN DUKURAY,** | 8:25-MJ-149 (MJK) |
| **Defendant.** | |

---

| | |
|---|---|
| Motion by: | Defendant, Ousain Dukuray |
| Date, Time and Place: | Friday, August 15, 2025, at 9:30 a.m.<br>U. S. District Court<br>Utica, NY |
| Supporting Papers: | Memorandum of Law with Attached Exhibits in Support |
| Nature of Action: | 1) Motion to Suppress Evidence;<br>2) Motion to Compel Discovery. |
| Relief Demanded: | Order suppressing physical evidence and statements or, in the alternative, granting an evidentiary hearing; order compelling discovery; order granting leave to file other motions. |
| Dated: | July 29, 2025 |
| By: | Gregory J. Teresi, Esq. |

TO:   Hon. Mitchell J. Katz, U.S. Magistrate Judge
      U.S. District Court
      10 Broad Street
      Utica, New York 13501

      Department of Justice- United States Attorney's Office
      Michael Gadarian, AUSA
      100 South Clinton Street, Suite 9000
      Syracuse, New York 13261

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

      v.                                                                 **Memorandum of Law**

**OUSAIN DUKURAY,**                                              **8:25-MJ-149 (MJK)**

      **Defendant.**

---

The defendant, Ousain Dukuray, hereby moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) for an order of suppression of tangible evidence seized and statements attributed to Mr. Dukuray during and after a warrantless law enforcement seizure and search on or about May 14, 2025 of the minivan bearing New Jersey plates driven by Haci Yurteri, which occurred in violation of Mr. Dukuray's constitutional rights and protections. In the alternative, Mr. Dukuray seeks an evidentiary hearing to challenge the government's contention that the seizure and search were constitutional and that the statements attributed to Mr. Dukuray were constitutionally obtained.

Second, Mr. Dukuray moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(E) to compel discovery.

Last, the defense seeks leave to make whatever further motions might be required in relation to late disclosure or notices provided by the government, if any, subsequent to the filing of this motion.

## STATEMENT OF RELEVANT FACTS

This case charges Ousain Dukuray ("Mr. Dukuray") with, on or about May 14, 2025, improper entry by an alien in Franklin County, New York, in violation of 8 U.S.C. § 1325(a)(2). See Indictment, CM/ECF Docket No. 8:25-MJ-149.

Upon information and belief, the charges arose after the 2013 Chrysler Town and Country bearing New Jersey plate number X42VLT driven and owned by Haci Yurteri was stopped by U.S. Boarder Patrol Agents ("Boarder Patrol") at approximately 11:30 p.m. on State Route 37 in Fort Covington, New York.

<u>Facts Relevant to the Seizure and Subsequent Statements Attributed to Mr. Dukuray</u>

1. On May 14, 2025, a 2013 Chrysler Town and Country driven and owned by Haci Yurteri was stopped by Boarder Patrol Agents on State Route 37 in Fort Covington, New York.

2. During the stop, Border Patrol Agents discovered Jondo Mikeladze, Ousain Dukuray and Sherzod Bobonorov, whom the government contends are illegal aliens.

3. According to the sworn declaration of Ousain Dukuray ("Mr. Dukuray Declaration"), at all times leading up to the stop the driver, Haci Yurteri, obeyed all rules of the road, maintained the speed limit, remained within his lane, and responded appropriately to all traffic signals and control devices. No one in the vehicle engaged in any activity that would be considered illegal, unusual, or suspicious for vehicle occupants.

4. Upon arrival at the Massena Border Patrol Station, Mr. Dukuray, along with the other occupants, were processed for further investigation. Mr. Dukuray's biographical information and fingerprints were recorded and entered into the Department of Homeland Security database.

5.  From the time of the vehicle stop, Mr. Dukuray did not believe he was free to terminate the encounter or leave the scene. He was restrained, taken into custody, and questioned by Border Patrol agents.

6.  Both at the scene and during subsequent questioning at the Massena Station, all questioning was conducted in English. Because Mr. Dukuray does not speak English, he could not fully understand the statements made to him or the questions asked.

7.  The entire encounter with law enforcement, including the questioning at the Massena Station, lasted for approximately nine hours after the vehicle stop.

## ARGUMENT

### I. THE TRAFFIC STOP AND SUBSEQUENT QUESTIONING OF MR. DUKURAY WERE CONDUCTED IN VIOLATION OF THE FOURTH AMENDMENT.

Mr. Dukuray moves to suppress the evidence seized during the warrantless seizure of the Chrysler Town and Country on the basis that the stop and seizure of the vehicle by USBP agents was conducted without reasonable suspicion that the vehicle contained aliens who were in the country illegally. The evidence obtained following the seizure, including all statements attributed to Mr. Dukuray, therefore, must be suppressed as the fruit of an illegal search.

#### A. The government's burden of proof.

In the case of a warrantless seizure and search, the defendant's initial showing of entitlement to challenge the government search and seizure triggers the government's burden of showing that the government action was valid because it fell within one of the exceptions to the warrant requirement.  See, United States v. Perea, 986 F.2d 633, 639 (2d Cir. 1993).

Here, the law is settled that Mr. Dukuray, as a passenger of a vehicle that was stopped by police, was "seized" by police and, therefore, is entitled to challenge the stop of the vehicle

4

and subsequent police action arising from that stop. Brendlin v. California, 551 U.S. 249, 251 (2007). Therefore, the government has the burden to prove the legality of the stop and subsequent questioning of the vehicle.

      **B.**      **The stop of the vehicle was conducted without reasonable suspicion that illegal aliens were present in the vehicle.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"The Fourth Amendment applies to the seizures of the person, including brief investigatory stops such as the stop of the vehicle...." United States v. Cortez, 449 U.S. 411, 417 (1981) (citing cases). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.... Based upon the whole picture, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 417-418 (citing cases). The Court in Cortez further clarified that "the whole picture... must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." Id.

In the context of the roving border stop, it is well-settled that an investigatory stop of the type conducted here by Border Patrol can occur only "when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country." United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975) (rejecting the government's argument that stops near the border should be permissible notwithstanding the lack of reason to believe a vehicle might contain illegal aliens).

In Brignoni-Ponce, the Supreme Court listed the types of factors that could trigger a

reasonable suspicion that the vehicle might harbor illegal aliens, such as a manner of driving reflecting an attempt to evade border officers; characteristics of a vehicle supporting its ability to transport concealed aliens; the appearance that a vehicle might be "heavily loaded", have "an extraordinary number of passengers, or the appearance that "persons [are] trying to hide." Id. at 885.

In this case, no facts articulated by the agents supported a reasonable suspicion that the 2013 Chrysler Town and Country harbored illegal aliens. The mere generalized suspicion, based on broader trends of illicit activity and the vehicle's presence at a known hotel, falls significantly short of the requisite legal standard of reasonable suspicion. The law mandates that for a stop and subsequent seizure to be lawful, there must be specific, articulable facts that justify such an intrusion on constitutional rights.

The observations made by the USBP agents were devoid of any particularized evidence indicative of illegal activity. The behavior of the vehicle's occupants, as described by the agents, can be regarded as natural reactions to the presence of law enforcement and do not substantiate a reasonable suspicion of criminal activity. Moreover, the generalized information concerning the trend of alien smuggling organizations operating at a specific venue is too attenuated to form a basis for reasonable suspicion concerning this specific vehicle on this specific day.

Furthermore, the radio communications between USBP agents and their dispatcher, which the defense has sought but not yet received, could provide crucial insight into the basis, or lack thereof, for the stop and seizure. The absence of such communication further undermines the claim of reasonable suspicion.

In terms of the communication received by the arresting officer, it is true that "[u]nder

the fellow officer rule, a police officer can make a lawful arrest even without personal knowledge sufficient to establish probable cause, so long as the officer is acting upon the direction of or as a result of communication with a fellow officer or another police agency in possession of information sufficient to constitute probable cause for the arrest" (People v Ketcham, 93 NY2d 416, 419 (1999) (Internal quotes omitted). However, "[a]n official communication, in and of itself, however, does not constitute probable cause. People v Blackman, 81 Misc 2d 12, 15 (Sup Ct 1975). In other words, without more, naked assertions of hot spots for criminal activity cannot it itself establish probable cause:

> In considering the information given by [the informing officer], the record is barren as to the source of his facts. The [informing officer] never indicated whether he was dealing with informers, or had knowledge based upon his own personal observations or leads secured by other members of his police organization.
>
> Id.

The law necessitates further elaboration on the source and credibility of the facts conveyed in the communication for it to substantiate probable cause, and in the absence of such elucidation, assertions regarding criminal activity areas or "hot spots" are deemed insufficient to establish probable cause. With no reasonable suspicion, the investigatory stop of the vehicle was conducted in violation of the Fourth Amendment, and evidence obtained, including statements attributed to Mr. Dukuray during subsequent police questioning, would be the fruit of the illegal stop and must be suppressed. In the alternative, since Mr. Dukuray has raised genuine issues of material fact about whether USBP agents had reasonable suspicion, an evidentiary hearing should be conducted to resolve those issues of fact.

II. **THE STATEMENTS ATTRIBUTED TO MR. DUKURAY WERE OBTAINED IN VIOLATION OF THE FIFTH AMENDMENT.**

The Fifth Amendment provides that "no person ... shall be compelled in any criminal

7

case to be a witness against himself." U.S. Const. amend. V. As the party seeking to suppress, the defendant has the burden of production. United States v. Miller, 382 F.Supp.2d 350, 361 (2005), *citing*, United States v. Arboleda, 633, F.2d 985, 989 (2d Cir. 1980); United States v.Mathurin, 148 F.3d 68, 69 (2d Cir. 1998) (Fifth Amendment). Here, based on the evidence proffered in the record that Mr. Dukuray made statements during questioning while in custody in the absence of his Miranda rights and his allegations of involuntariness, Mr. Dukuray has met his burden of production on the issues raised. The burden shifts to the government to prove by a preponderance of the evidence Miranda voluntariness either because there was no custodial interrogation implicating Miranda or there was some exception to the Miranda rule, or that Miranda was given and Mr. Dukuray made a valid waiver prior to making the statement. Second, the government must prove that the statements were not the result of coercion or deception.

    A.    **Miranda Warnings Were Required**

The USBP agents were required to advise Mr. Dukuray of his Miranda warnings before commencing questioning of him at the scene of the stop when he was taken into custody and thereafter. Pursuant to Miranda, the police must advise a defendant of his rights if two preconditions are met: namely, custody and interrogation. United States v. Miller, 382 F.Supp.2d 350, 370 (2005), citing, Thompson v. Keohane, 516 U.S. 99, 102 (1995). Custody is established if, in light of the circumstances of an interrogation, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave. Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

Interrogation requires express questioning or its functional equivalent, and includes:

> "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect . . .A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation."

United States v. Miller, 382 F.Supp.2d 350, 370 (2005), *citing,* Rhode Island v. Innis, 446 U.S. 291, 300-302 (1980).

At the scene of the USBP stop, Mr. Dukuray was restrained. He was removed from the vehicle under the force of multiple USBP agents, separated from the other occupants of the car, and handcuffed behind his back. He was restrained during questioning at the scene of the USBP stop and thereafter when he was removed from the scene, transported in a USBP vehicle to a law enforcement office, and subjected to further questioning. He was not free to leave. Mr. Dukuray was in custody for purposes of Miranda.

All of the statements attributed to Mr. Dukuray during his contacts with USBP agents were extracted through questioning. No responses were volunteered or spontaneous. Clearly, Mr. Dukuray's statements were in response to interrogation.

The Court in Miranda concluded that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored," Miranda, 384 U.S. at 467, 86 S.Ct. 1602. The failure to administer Miranda warnings during the custodial interrogation up to that point must lead to the suppression of the statements elicited.

### B.    Traditional Due Process, Statements Not Voluntary

Mr. Dukuray alleges that any statements obtained during the interrogation were obtained against his will.  Statements determined to be obtained by coercion must be suppressed. Whether a suspect's statements are voluntary or the product of coercion is

determined after careful evaluation of the totality of the surrounding circumstances. *see*, Green v. Scully, 850 F.2d 894, 901 (1988), *citing*, Fare v. Michael C., 442 U.S. 707, 726, 99 S.Ct. 2560, 2572 (1979); Mincey v. Arizona, 437 U.S. 385, 401, 98 S.Ct. 2408, 2418 (1978).

In applying the totality of the circumstances test, those factors that a court should consider to determine whether an accused's statement is voluntary center around three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of law enforcement officials. See, Green v. Scully, 850 F.2d at 901, 902 (1988).

The relevant characteristics of the individual giving the statement are the individual's experience and background, youth and lack of education or intelligence. See, Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047 (1973). The conditions under which a suspect is questioned includes the place where an interrogation is held, and the length of detention. Mincey v. Arizona, 437 U.S. at 398, 98 S.Ct. at 2416 (1978) and Schneckloth v. Bustamonte, 412 U.S. at 226, 93 S.Ct. at 2047 (1973). The conduct of law enforcement officials includes long restraint in handcuffs, whether any physical deprivations occurred, whether psychologically coercive techniques were employed, such as promises of leniency or other benefits, repeated or prolonged questioning, or the failure to inform the accused of his constitutional rights. Green v.Scully, 850 F.2d 894, 902 (1988), *citing* Schneckloth v. Bustamonte, 412 U.S. at 226, 93 S.Ct. at 2047 (1973).

Here, the characteristics of the accused, the conditions of the interrogation and the conduct of law enforcement officials support the conclusion that any statements attributed to Mr. Dukuray were involuntarily made. There are no characteristics about Mr. Dukuray suggesting that he would have been particularly resistant to the coercive characteristics of his

10

encounter with police. He has no criminal history. He does not speak English very well. When law enforcement agents spoke with him in English during an obviously serious criminal investigation, the language barrier made Mr. Dukuray more susceptible to coercion than it otherwise might have. The encounter lasted into the early hours of the morning.

Given the foregoing circumstances, the defense has satisfied its burden of production on this issue. At a minimum, the assessment of voluntariness requires further factual development to appraise the conduct of law enforcement.

### C. Miranda was ineffective if given.

Late-administered Miranda warnings could not have been effective Miranda warnings. Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601 (2004). When statements were elicited from Mr. Dukuray through questioning relating to law enforcement concerns whether Mr. Dukuray came into the Country illegally, Miranda warnings which might have preceded a later statement failed to serve their intended function, namely to advise the suspect he has the right to remain silent. Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601 (2004). The Miranda rule is frustrated if the police are permitted to undermine its meaning and effect by intentionally questioning an individual initially in the absence of Miranda.

Miranda addressed "interrogation practices . . .likely . . .to disable [an individual] from making a free and rational choice" about speaking. Missouri v. Seibert, 542 U.S. at 611, 124 S.Ct. at 2609 (2004) *citing*, Miranda, 384 U.S. at 464-465, 86 S.Ct. 1602 (1966). The question in cases with multiple interrogations becomes could the warnings, given the circumstances under which they are given, function effectively. The Seibert standard outlines the relevant facts important to determine whether or not Miranda warnings given after an un-Mirandized statement can be effective. Included on this list are: completeness and detail of the first round

11

of questions; overlapping content of statements; timing and setting of the first and second statements; the continuity of the police personnel; and the degree to which interrogators questions treated the second round as continuous with the first. Seibert, 542 U.S. at 615, 124 S.Ct. at 2612 (2004). Each factor has direct bearing on the perception of the warnings by the suspect. At a minimum, Mr. Dukuray has raised genuine issues of material fact regarding the effectiveness of the late-administered Miranda warnings, and a hearing should be granted.

## CONCLUSION

WHEREFORE, the defendant, Mr. Dukuray, respectfully requests an order suppressing all evidence obtained, including statements attributed to him following the seizure of the vehicle he was in on May 14, 2025, or, in the alternative, an evidentiary hearing to resolve factual disputes essential to decide the motion to suppress; an order compelling discovery; and an order granting leave to file additional motions as may be necessary.

Mr. Dukuray reserves the right to supplement this memorandum due to any additional facts which become known subsequent to the filing of this motion and any government assertions of exceptions to the warrant requirement not yet known by the defense.

DATED: July 29, 2025

_____
GREGORY J. TERESI, ESQ.
Attorney for Ousain Dukuray
Bar Roll No. 513693

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

**CERTIFICATE OF SERVICE**

v.

**OUSAIN DUKURAY,**   Docket No. 8:25-MJ-149 (MJK)

**Defendant.**

---

I, Gregory J. Teresi, Esq., attorney of record for the above-named defendant, hereby certify that on July 29, 2025, I electronically filed the foregoing Motion to Suppress Evidence and to Compel Discovery, with exhibits, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Michael Garadian, Assistant U.S. Attorney.

_____
GREGORY J. TERESI, ESQ.